JUDGE FRANK MONTALVO

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION



|  |  |
|---|---|
| ERIK SALAIZ, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| HW SELLER LLC, a Illinois Limited Liability | § |
| Company | § |
| | § |
| | § |
| | § |
| | § |
| **Defendants.** | § |
| | § |

# EP22CV0360

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant HW SELLER LLC ("HW" "Defendant") is a Limited Liability Company

organized and existing under the laws of Illinois and can be served via registered agent JI Kim at

303 E. Wacker Drive, Suite 2840, Chicago, IL 60601.

## JURISDICTION AND VENUE

3.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff;

adds little complexity to the case.

4.      Personal Jurisdiction.  This Court has general personal jurisdiction over the defendant

because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5.      Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

6.      This Court has venue over the Defendant because the calls at issue were sent on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely

2

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff's personal cell phone (XXX) XXX-9280 has been registered on the National Do-

4

Not-Call Registry since August 24, 2006.

21.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

22.    Defendant HW offers health insurance products to consumers along with additional Medicare products to senior citizens with Medicare. *See Exhibit A.*

23.    As part of their marketing, Defendant HW hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an automatic telephone dialing system ("ATDS") to solicit additional Medicare products on behalf of Defendant HW.

24.    Defendant HW approves of the contracts with the telemarketers.

25.    Defendant HW authorizes the payments to the telemarketers.

26.    Defendant HW pays the telemarketers out of bank accounts they own and control.

27.    Plaintiff has never had any relationship with Defendant HW or has ever been a customer of Defendant HW and never gave them his prior express written consent to receive the calls alleged in this case.

28.    Defendant HW has been sued prior to this lawsuit for violating the TCPA *Darder v. HW Agency, LLC.*, No. 1:22-cv-00569 (N.D.IL., Jan. 31, 2022) and continues their illegal behavior because violating the TCPA benefits Defendant HW financially.

29.    On September 08, 2022, Defendant HW had their legal named changed from Healthworks Agency LLC to HW Seller LLC as recorded on the Illinois Secretary of State website. *See Exhibit B.*

30.    Defendant HW's website they own and control is https: healthwork Insurance.com.

5

31.    Plaintiff received at least ten (10) unauthorized phone calls to his personal cell phone 9280 within a seventy-two-hour period from telemarketers calling on behalf of Defendant HW soliciting Medicare products ("the calls").

32.    The calls Plaintiff received from telemarketers calling on behalf of Defendant HW all started with 3-4 seconds of dead air followed by an audible beep (indicating the calls were made using an ATDS) before being connected to a telemarketer.

33.    The ATDS used to make the calls had the capacity to store and produce telephone numbers using a random or sequential number generator.

34.    With information and belief Plaintiff has received more calls from telemarketers calling on behalf of Defendant HW within the past two years that are unknown to Plaintiff at this time but will be revealed during discovery.

35.    On April 22, 2022, Plaintiff received one of multiple unauthorized calls to his personal cell phone 9280 from a telemarketer calling on behalf of Defendant HW from phone number (325) 246-1224.

36.    Plaintiff answered and there was a 3-4 second delay followed by an audible beep (indicating the call was made using an ATDS) before being connected to a telemarketer named Rhea that stated she was calling from "senior benefits."

37.    Defendant HW trains their telemarketers not to reveal their true identity and say they are calling from "senior benefits" in order to duck liability from violating the TCPA.

38.    Rhea asked if Plaintiff had Medicare parts A and B.

39.    Plaintiff was extremely aggravated and annoyed for continuing to receive the same calls from telemarketers saying their calling from "senior benefits" soliciting Medicare products and advised Rhea he had Medicare for the sole purpose of identifying the company responsible for

6

the calls.

40.    With the permission of a family member Plaintiff knows has Medicare, Plaintiff asked the

individual if he can borrow their Medicare information for the sole purpose of identifying the

company responsible for the calls. Plaintiff did not borrow the individuals Medicare information

to gain any additional Medicare benefits or to perform any Medicare fraud that would violate any

laws or cause the US government any financial loss.

41.    Rhea then asked Plaintiff qualifying Medicare questions and advised Plaintiff she would

be transferring him to a "licensed agent" that will discuss additional Medicare benefits Plaintiff

may qualify for.

42.    Plaintiff was then transferred to a representative named Ryan Hanrahan from Defendant

HW.

43.    Before Rhea transferred the call to Ryan, Rhea stated to Ryan,

"Hello, I am Rhea I have here Mr. from the state of Texas with the zip code 79901 and he has Medicare
parts A and B and he is interested in the extra benefits."

44.    Ryan accepted the transfer from Rhea which confirmed Defendant HW hires

telemarketers to call consumers *en mass* using an ATDS without prior express written consent of

the called party soliciting additional Medicare products on behalf of Defendant HW.

45.    Ryan asked Plaintiff a series of qualifying questions and advised Plaintiff he was going to

check for additional Medicare products for Plaintiff.

46.    Ryan then solicited Plaintiff for an upgraded Medicare HMO Plan with "United

Healthcare" on behalf of Defendant HW.

47.    If Plaintiff would have agreed to the upgraded Medicare HMO Plan with "United

Healthcare" it would benefit Defendant HW financially.

48.    Ryan emailed Plaintiff with his contact information which confirmed the company

7

responsible for the calls. *See Exhibit C.*

49.     Defendant HW's telemarketers on five occasions used a local area code (915) where

Plaintiff resides to trick him into thinking the call was local.

50.     Table A below displays the calls made to Plaintiff on behalf of Defendant HW.

Table A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 04/19/2022 | 12:12 PM | 713-565-7586 | Telemarketer Rhea calling from senior benefits. |
| 2. | 04/19/2022 | 12:20 PM | 915-232-9310 | Telemarketer John calling from senior benefits. |
| 3. | 04/19/2022 | 2:55 PM | 915-247-9797 | Telemarketer John calling from senior benefits. |
| 4. | 04/20/2022 | 1:43 PM | 432-200-0943 | Telemarketer Rhea calling from senior benefits. |
| 5. | 04/20/2022 | 2:27 PM | 915-284-4378 | Telemarketer Rosa calling from senior benefits. |
| 6. | 04/21/2022 | 12:30 PM | 915-237-7058 | Telemarketer John calling from senior benefits. |
| 7. | 04/21/2022 | 12:51 PM | 915-338-9465 | Telemarketer John calling from senior benefits. |
| 8. | 04/21/2022 | 1:33 PM | 830-208-8168 | Telemarketer Mike calling from senior benefits. |
| 9. | 04/22/2022 | 8:35 AM | 325-230-1879 | Telemarketer Rhea calling from senior benefits. |

| 10. | 04/22/2022 | 8:37 AM | 325-246-1224 | Telemarketer Rhea calling from senior benefits. Transferred to Ryan from HW. |
|-----|------------|---------|--------------|---------|

51. Defendant HW employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

52. Each and every call was placed while knowingly ignoring the national do-not-call registry. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

53. Defendant HW never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to Defendant HW to rheamhm@healthworkslearnsmart.com on October 7, 2022, which the email Plaintiff received from Ryan. *See Exhibit C.*

54. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

55. No emergency necessitated the calls.

56. With information and belief, Defendant HW did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

57. Defendant HW's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

58. Defendant HW's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

59. Defendant HW's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

9

60.     Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:
reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and
more frequent charging of his cell phone.

## VICARIOUS LIABILITY OF DEFENDANT HW

61.     Defendant HW is vicariously liable for the telemarketing calls that generated the lead for
Defendant HW.

62.     The FCC is tasked with promulgating rules and orders related to enforcement of the
TCPA. 47 U.S.C. § 227(b)(2).

63.     The FCC has explained that its "rules generally establish that the party on whose behalf a
solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations
Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13
(1995).

64.     The FCC reiterated that a company on whose behalf a telephone call is made bears the
responsibility for any violations. *In re Rules and Regulations Implementing the Telephone
Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf
of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a
third party on another entity's behalf under 47 U.S.C. § 227(b)).

65.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post
may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer

10

that physically places the call would make enforcement in many cases
substantially more expensive and less efficient, since consumers (or law
enforcement agencies) would be required to sue each marketer separately
in order to obtain effective relief. As the FTC noted, because sellers may
have thousands of independent marketers, suing one or a few of them is
unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration

marks and internal quotation marks omitted).

66.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

67.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

68.     To the contrary, the FCC—armed with extensive data about robocallers and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587

¶ 36.

69.     Vicarious liability is important because reputable, traceable, and solvent companies that

benefit from illegal telemarketing are "in the best position to monitor and police TCPA

compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

70.     Defendant HW is legally responsible for ensuring that the telemarketers that make

telemarketing calls on its behalf comply with the TCPA when so doing.

71.     Defendant HW knowingly and actively accepted business that originated through illegal

telemarketing.

72.     Defendant HW knew (or reasonably should have known) that its telemarketers were violating the TCPA on its behalf but failed to take effective steps within HW's power to force them to cease that conduct.

73.     By hiring a company to make calls on its behalf, Defendant HW "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

74.     Moreover, Defendant HW maintained interim control over the actions of its telemarketers.

75.     For example, Defendant HW had absolute control over whether, and under what circumstances, it would accept a customer from their telemarketers.

76.     Furthermore, Defendant HW had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant HW and the ability to require them to respect the National Do Not Call Registry.

77.     Defendant HW also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

78.     Defendant HW donned its telemarketers with apparent authority to make the calls at issue.

79.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

80.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

12

81.     A principal may make a manifestation "by directing an agent to make statements to third

parties or directing or designating an agent to perform acts or conduct negotiations, placing an

agent in a position within an organization, or placing an agent in charge of a transaction or

situation." Restatement § 2.03 cmt. c.

82.     Defendant HW is the liable party as the direct beneficiary of the illegal telemarketing

calls as it stood to gain Plaintiff as a customer when Defendant HW representative solicited

Plaintiff for additional Medicare products.

### The Plaintiff's cell phone is a residential number

83.     The calls were to the Plaintiff's cellular phone 9280 which is the Plaintiff's personal cell

phone that he uses for personal, family, and household use. The Plaintiff maintains no landline

phones at his residence and has not done so for at least 15 years and primarily relies on cellular

phone to communicate with friends and family. The Plaintiff also uses his cell phone for

navigation purposes, sending and receiving emails, timing food when cooking, and sending and

receiving text messages. The Plaintiff further has his cell phone registered in his personal name,

pays the cell phone from his personal accounts, and the phone is not primarily used for any

business purpose.

### CAUSES OF ACTION

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

84.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

85.     Defendant and/or their telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least ten (10) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an ATDS without prior express written consent.

86.     Plaintiff was statutorily damaged at ten (10) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

87.     Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

88.     Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS without prior express written consent.

## COUNT TWO:

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

89.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

90.     Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls

for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

91.     Plaintiff was statutorily damaged at least ten (10) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

92.     Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

93.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

94.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

95.     The foregoing acts and omissions of the Defendant and/or their telemarketers or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

> a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];
>
> b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

      c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

96.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

97.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendant jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendant violates the TCPA;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for ten calls.

E.     An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for ten calls.

F.     An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order



JUDGE FRANK MONTALVO

EP22CV0360

# Health Insurance
# That Works For You

Find Health Insurance Plans
in your area today

Contact Us

Exhibit A

# ⚙️HealthWorks



This website uses cookies

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

Accept

Our experienced health insurance advisors put your needs first. We are proud to provide a high quality level of customer service and are committed to the health and wellness of all our clients. Our goal is to make your health insurance work for you.

## Experience and Professionalism

Exhibit A

 **⚙ HealthWorks**



We understand that today's health insurance landscape can be very confusing. We're here to listen and find affordable options to meet your individual needs

This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

Accept

Individual and Family Coverage

Plans to cover medical expenses for you and your loved ones

Learn more

Medicare Advantage Plans

Exhibit A


**cyberdriveillinois.com is now ilsos.gov**



Office of the Secretary of State Jesse White
**ilsos.gov**

# Corporation/LLC Search/Certificate of Good Standing

## LLC File Detail Report

File Number     06499457

Entity Name     HW SELLER LLC

Status          ACTIVE

### Entity Information

Principal Office
303 E WACKER DR, SUITE 2840
CHICAGO, IL 606010000

Entity Type
LLC

Type of LLC
Domestic

Organization/Admission Date
Thursday, 31 August 2017

Jurisdiction
IL

Duration
PERPETUAL

### Agent Information

Exhibit B

Name
JI KIM

Address
303 E WACKER DR STE 2840
CHICAGO , IL 60601

Change Date
Wednesday, 20 January 2021

## Annual Report

For Year
2022

Filing Date
Friday, 24 June 2022

## Managers

Name
Address
GREGORY, JASON M
303 E WACKER DR STE 2840
CHICAGO, IL 606010000

Name
Address
KIM, JI SUNG
303 E WACKER DR STE 2840
CHICAGO, IL 606010000

Name
Address
BUKOWSKI, STANLEY M.
303 E WACKER DR STE 2840
CHICAGO, IL 606010000

## Old LLC Name

09/08/2022
HEALTHWORKS AGENCY LLC

Exhibit B

 Gmail

---

**My Info**
1 message

---

**Ryan Hanrahan** <rhanrahan@healthworksinsurance.com>                          Fri, Apr 22, 2022 at 8:52 AM
To: salaiztransportation@gmail.com

Hi David,

It was nice getting to talk to you just now. My direct contact number is 855-333-6432 x 3018. I hope you have a great weekend and I look forward to talking with you again in October.

--
Best Regards,

**Ryan Hanrahan**
Licensed Benefit Advisor
**Direct:** (855) 333-6432  ext. 3018
rhanrahan@healthworksinsurance.com



Exhibit C